IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC R.,[1] | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[2] | : | No. 22-03428 |
| Defendant. | : | |

## MEMORANDUM OPINION

**PAMELA A. CARLOS**
**U.S. MAGISTRATE JUDGE**                                                                 September 9, 2024

Plaintiff Eric R. appeals the Commissioner of Social Security's final decision to deny his claim for benefits arguing specifically that the ALJ's cited job numbers cannot constitute substantial evidence due to several issues with the vocational expert's testimony. He contends that the vocational expert could not identify which specific codes she eliminated in order to calculate the number of jobs in the national economy that Plaintiff could perform in light of his limitations. Given this, together with the expert's failure to identify any specific method to approximate her numbers, Plaintiff argues that the job figures are not reliable, not verifiable, and not supported by substantial evidence.

The Commissioner disagrees noting that similar arguments have already been rejected by courts in this circuit, and that Plaintiff does not dispute that significant numbers of jobs exist after

---

[1] In accordance with the Court's recent standing order on party identification in social security cases, I have referred to the plaintiff solely by his first name and last initial. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

accounting for Plaintiff's limitations. Rather, Plaintiff simply disputes the documentation of the expert's methodology. Under well-established Third Circuit precedent, there is no precise estimate for what constitutes "significant numbers" of jobs under the Social Security Act, and it could be as few as several hundred. Here, where the expert has identified nearly one million jobs, the Commissioner contends that there is no reversible error.

For the reasons that follow, I will affirm the Commissioner's decision and Plaintiff's request for review is denied.

I.  **BACKGROUND**

  A.  **Procedural History**

In 2016, Plaintiff filed for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging a disability onset date of March 1, 2014 due to bipolar I disorder – manic depression and major depressive disorder. R.164-65, 460-75, 477-82, 579. He was 39 years old as of the alleged onset date. R.31. He was 46 years old as of the most recent telephone hearing and thus was classified as a "younger individual age 18-49." R.31 (citing 20 C.F.R. §§ 404.1563 and 416.963). Plaintiff testified that he did not graduate high school, but his disability report indicated he completed 12th grade in 1989. R.31, 580.

Plaintiff's claim was initially denied on December 12, 2016. R.226-30. Two administrative hearings were held in July 2018 and May 2019, and the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled within the meaning of the Social Security Act on June 18, 2019. R.104-63, 192-218. On January 21, 2021, the Appeals Council granted Plaintiff's request for review, noting that the ALJ did not rule on Plaintiff's objections concerning the vocational expert's testimony and qualifications. R.219-23, 352-56, 648-78. The matter was remanded back to the ALJ for further proceedings. R.219-23.

Following a third hearing on May 20, 2021, the ALJ issued a decision on July 19, 2021 again finding Plaintiff not disabled. R.12-48. The Appeals Council denied Plaintiff's latest request for review, meaning the ALJ's written opinion became the final decision of the Commissioner. R.1-6, 457-59. Plaintiff now timely appeals.[3]

### B.   The ALJ's Decision.

The ALJ evaluated Plaintiff's claims using the five-step sequential analysis set forth in the Social Security regulations.[4] As relevant to the instant appeal, the ALJ at step five relied upon the testimony of a vocational expert to identify several jobs in the national economy that Plaintiff could perform given his residual functional capacity, including laundry laborer, assembler, hand packer, and packer. R.36-37. According to the ALJ, there were approximately 970,000 jobs in the aggregate as between these four occupations. R.37.[5]

The ALJ further explained that there was lengthy questioning of the vocational expert concerning her process for determining these job numbers:

> Ms. Rutherford [the vocational expert] testified in great depth and detail as to her process for determining job numbers. She stated that she relies on Department of Labor and Industry and Bureau of Labor Statistics and that these are grouped by OES [Occupational Employment Statistics] or GOE [Guide for Occupational Exploration] code. She does not rely on SkillTRAN, but she does refer to it. She said that this company attempts to "break things down by DOT [Dictionary of

---

[3]   The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C § 636(c). *See* ECF Doc. No. 9.

[4]   The sequential analysis requires the ALJ to evaluate (1) whether claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering his residual functional capacity; and (5) whether the claimant can adjust to other work considering his residual functional capacity, age, education, and work experience. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201-202 (3d Cir. 2019) (citing 20 C.F.R. § 416.920(a)(4)(i)-(v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

[5]   More specifically, the ALJ explained that there were approximately 50,000 available jobs for the Laundry Laborer occupation, 340,000 for the Assembler occupation, 400,000 for the Hand Packer occupation, and 180,000 for the Packer occupation. R.37.

> Occupational Titles]," but that she does not agree with their methodology. The vocational expert testified that she arrives at her available jobs by taking a category and then providing an example DOT Code based on data. For example, the Packing job above is just a representative job. She said that she relies on sources such as Department of Labor and Industry and Bureau of Labor Statistics. She may have to reduce or exclude some work based on skill level or social interaction, for example. For example, as regarding the Assembler or Packer jobs above, some of these will allow for sit/stand option. She will reduce job numbers if there is such a restriction related to sit/stand based on her professional experience and explained that this limitation is *not* considered to be a reasonable accommodation. The vocational expert then adjusts numbers based on the limitations within a given residual functional capacity. Ms. Rutherford described that it is a matter of professional experience when adjusting to find jobs to fit a hypothetical. She noted that she tends to use "common jobs" that have stood the test of time and jobs that have not changed much over time.

R. 37-38. The ALJ further explained that Plaintiff's attorney questioned how some jobs were isolated within a given category such as "packer," and specifically highlighted that numerous packing jobs may have different skill levels. R.38. But the vocational expert "testified that there is a program that isolates the DOT codes that do not meet a given skill level," and further elaborated that she does not just rely on the automated program but also relies on the raw data that she updates annually. R.38.

Next, the ALJ recounted counsel's questions concerning the need to "train" and "shadow" other employees during any probationary period, and whether the expert accounted for this in her analysis. R.38. Ms. Rutherford acknowledged that during such period, "there would obviously be interactions between [a] supervisor and an individual worker," but "there is no evidence that the interventions in the beginning would necessarily exceed" Plaintiff's limitations concerning occasional interactions with supervisors. R.38.

Finally, the ALJ observed that in a letter dated May 26, 2021, Plaintiff's counsel requested two weeks to submit rebuttal evidence related to the vocational expert's most recent testimony. R.37. But the ALJ explained that no further requests for an extension of time were made, and Plaintiff's counsel submitted nothing within the allotted timeframe. Instead, he submitted an

4

undated letter on July 6, 2021, well over 40 days after May 26, 2021. R.37. The ALJ found this rebuttal was untimely, and therefore it not admitted to the record. R.37. The ALJ further observed that Plaintiff's counsel had previously submitted a brief on many of these same issues, so there was no justification for the untimely filing, and that counsel had full opportunity to cross examine the expert and did so. R.37.

Given all this, the ALJ concluded that Plaintiff was not disabled as that term is defined by the Act. R.39.

## II.  STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 587 U.S. 97, 99 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). In applying this deferential standard of review, the Court "must not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford*, 399 F.3d at 552). In other words, the Court must not re-weigh the evidence before the ALJ, but instead must assess whether substantial evidence supports the ALJ's findings. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").

In doing so, the Court determines whether the ALJ's decision "meets the burden of articulation demanded by the courts to enable informed judicial review." *Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *5 (M.D. Pa. May 19, 2021). In this regard, the ALJ need not "employ particular 'magic' words" or "adhere to a particular format in conducting his analysis." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004)). The Court requires—at the very least—that the ALJ "set forth the reasons for [their] decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

## III.   DISCUSSION

Plaintiff contends that substantial evidence does not support the ALJ's cited job numbers at step five of the sequential analysis because the vocational expert's testimony failed to provide Plaintiff with "sufficient indicia of reliability." *See* Doc. No. 11 at 10. For the reasons explained below, Plaintiff's arguments are unavailing.

At step five, an ALJ must determine whether the claimant can adjust to other work considering their residual functional capacity, age, education, and work experience. *See Hess*, 931 F.3d at 201-202 (citing 20 C.F.R. § 416.920(a)(4)(i)-(v)). As to this issue, the Commissioner bears the burden of proof. *Id*. "Advisory testimony from a vocational expert is often sought by the ALJ for that purpose … and factors to be considered include medical impairments, age, education, work experience and RFC." *Rutherford*, 399 F.3d at 551 (citations omitted). Such testimony "typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy." *Penrose v. Comm'r of Soc. Sec.*, No. 1:20-

CV-00011-NLH, 2020 WL 7640585, at *7 (D.N.J. Dec. 23, 2020). In this regard, "[t]here is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act." *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013). Indeed, our court of appeals has found that as few as 200 jobs in the regional economy was sufficient for these purposes. *See Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987); *see also Ahmad v. Comm'r of Soc. Sec.*, 531 F. App'x 275, 278 (3d Cir. 2013) ("[W]e conclude that the ALJ did not err by concluding that the 569 jobs available as a surveillance system monitor was evidence of other work in significant numbers in the national economy."); *Benton v. Comm'r of Soc. Sec.*, No. 1:18-CV-09478-NLH, 2019 WL 2285490, at *7 (D.N.J. May 29, 2019) (holding that 1,940 tree planter jobs constituted "significant" numbers in the national economy).

Plaintiff is initially unsatisfied with the vocational expert's testimony because she could not (and did not) produce certain data supporting her job figures, even upon Plaintiff's request. Plaintiff argues that because the expert could not identify what DOT codes she removed for any individual SOC group code, it is "impossible to determine whether she included DOT codes that were precluded by the hypothetical RFC." *See* Doc. No. 11 at 8, 10 (citing R.85-96). In other words, Plaintiff maintains that there is no way to verify that the expert's testimony was reliable, and therefore, it cannot constitute substantial evidence.

Plaintiff's frustrations are understandable, and the undersigned acknowledges that at the hearing the vocational expert could not identify which specific DOT codes she eliminated from a particular SOC code in order to reach her estimates. R.93.[6] But this alone is not reversible error.

---

[6] For example, Plaintiff's counsel asked, "[s]o which ones [DOT codes] did you bounce from this? . . . Which other DOT codes did you eliminate from that SOC code?" R.93. The vocational expert responded, "[a]t this point, I would not – have no idea. That's where the behind-the-scenes research is. That's pages of – I do hard copy more than computer. Pages of raw data that I use for that." R.93. Counsel further asked, "essentially, you're telling me that you can't tell me which SVP 1 or 2 DOT codes you

The Supreme Court in *Biestek v. Berryhill*, 587 U.S. 97 (2019) addressed a similar, though not directly analogous situation, and held that a vocational expert's refusal to provide the data supporting her job estimates—even upon request by the claimant—does not categorically render the testimony "unreliable." On cross-examination of the expert, Biestek's attorney asked where she was getting her numbers from, to which she responded the Bureau of Labor Statistics and her "own individual labor market surveys." *Id.* at 101 (citing hearing testimony). The lawyer then requested that the expert turn over the private surveys for his review, but she refused citing confidentiality concerns. *Id.* After Biestek's attorney suggested that she redact any personal client information, the ALJ interjected, stating he would not require her to produce the files in any form. *Id.* Given this, Biestek argued to the Supreme Court that where a claimant makes a demand for the expert's supporting data regarding job availability, and the expert refuses, the testimony cannot constitute substantial evidence. *Id.* at 103. The failure to provide such information, according to Biestek, necessarily casts the testimony into doubt, undercuts the expert's credibility, and precludes meaningful cross-examination. *Id.* at 106-07.

But the Supreme Court rejected Biestek's proposed rule and explained, "[e]ven though the applicant might wish for the data, the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold," and qualify as substantial evidence. *Id.* at 108. To illustrate this point, the Court provided a hypothetical example:

> Suppose an expert has top-of-the-line credentials, including professional qualifications and many years' experience; suppose, too, she has a history of giving sound testimony about job availability in similar cases (perhaps before the same ALJ). Now say that she testifies about the approximate number of various sedentary jobs an applicant for benefits could perform. She explains that she arrived at her figures by surveying a range of representative employers; amassing specific information about their labor needs and employment of people with disabilities;

---

eliminated, correct?" R.93. The vocational expert replied, "[c]orrect, I can't tell you today. I did that in my raw date, which I – update, like, every December." R.94.

> and extrapolating those findings to the national economy by means of a well-accepted methodology. She answers cogently and thoroughly all questions put to her by the ALJ and the applicant's lawyer. And nothing in the rest of the record conflicts with anything she says. But she never produces her survey data. Still, her testimony would be the kind of evidence—far "more than a mere scintilla"—that "a reasonable mind might accept as adequate to support" a finding about job availability.

*Id.* at 105. Given this, the Court explained that any inquiry concerning the reliability of the expert's testimony must be handled on a case-by-case basis, which "takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record." *Id.* at 108. "Sometimes an expert's withholding of such data, *when combined with other aspects of the record*, will prevent her testimony from qualifying as substantial evidence." *Id.* at 108 (emphasis added). But the Court emphasized that such review "defers to the presiding ALJ, who has seen the hearing up close." *Id.*

To be sure, Plaintiff argues further that there are additional reasons why the vocational expert's testimony is not reliable. Because there is no "way to verify that she eliminated all the proper DOT codes that did not fit the hypothetical," Plaintiff argues that her job estimates were very likely inflated. *See* Doc. No. 11 at 8, 10. Indeed, Plaintiff suggests that the vocational expert even admitted that she included certain DOT codes in her SOC group numbers' calculations that should have been omitted due to certain limitations noted in Plaintiff's residual functional capacity. *See id.* at 8, 10 (citing 86-93). And to make matters worse, Plaintiff insists that the expert "failed to identify any specific method she utilized to approximate her job numbers." *See id.* at 9. Rather, she testified that "she 'does not rely on the program by SkillTran' (JobBrower Pro), which uses a method known as the *occupational density method*, which attempts to estimate the actual number of jobs in the national economy for a specific DOT code," *see id.* at 8 (citing R.82-83), and "made no mention of the *equal distribution method*, which 'assumes that the total number of jobs that

9

exist for a given SOC group are distributed equally among the number of DOT occupations within that SOC group." *See id.* at 9 (citations omitted).

Nonetheless these arguments are unconvincing. First, courts in this circuit have consistently rejected similar arguments questioning an expert's use of SOC codes and the corresponding risk for inflated job estimates. *See, e.g., Melissa B. v. Commissioner of Social Security,* 2021 WL 5578698, at *6 (D.N.J., 2021) (rejecting plaintiff's argument that the expert's reliance on SOC codes was erroneous because it "inflate[s] the actual number of jobs in the national economy."); *Johnson v. Colvin*, No. 4:09-CV-02228, 2014 WL 7408699, at *15 (M.D. Pa. Dec. 30, 2014) ("[E]ven if the vocational [expert] applied the broader SOC categories, district courts in this Circuit have held that this methodology is reliable.") (citing *McKinnon v. Comm'r of Soc. Sec.*, No. CIV. 12-4717 NLH, 2013 WL 5410696, at *5 (D.N.J. Sept. 26, 2013))[7]; *James v. Astrue*, No. CIV.A. 11-253, 2011 WL 7143113, at *25 (E.D. Pa. Dec. 27, 2011), *report and recommendation adopted*, No. 11-CV-253, 2012 WL 346676 (E.D. Pa. Feb. 3, 2012) (explaining that just because "DOT classifications are more specific than the SOC system is not indicative that this method of correlation is unreliable.").

Moreover, upon reviewing the hearing testimony, Plaintiff also overstates the extent to which the vocational expert "acknowledged" that she included DOT codes in her calculations that "should have been precluded by Plaintiff's hypothetical RFC limitation for no assembly work."

---

[7] The claimant in *McKinnon*—like Plaintiff here—argued that because the vocational expert used the SOC code to provide statistical data on the number of jobs in the national and local economy, rather than DOT data, the expert's figures were "overstated." No. CIV. 12-4717 NLH, 2013 WL 5410696, at *5 (D.N.J. Sept. 26, 2013). Specifically, the claimant in *McKinnon* argued the SOC number was not accurate because the category included 73 total jobs, with only three of them falling within claimant's sedentary RFC. *Id.* "[W]ithout knowing how many of those three sedentary jobs exist," the claimant argued that the ALJ failed to support her burden at step five of the analysis. *Id.* The district court, however, rejected this argument, explaining that the SOC "qualifies as 'reliable job information available from various governmental and other labor publications.'" *Id.* (citation omitted).

*See* Doc. No. 11 at 10 (citing R.35, 86-93). After reading the definition of a specific DOT code, Plaintiff's attorney asked, "[s]o it sounds like that job requires the individual to work on an assembly line or conveyer line, correct," to which the expert responded, "[y]es." R.91 The expert continued to explain, "*I would not use that example.* I would eliminate that, because that, to me, is a production-oriented job, because sometimes conveyor lines are set at some speed." R.92 (emphasis added).  The expert later asked, "[d]id I give that as an example DOT," to which Plaintiff's attorney stated, "[n]o, but you said you only eliminated anything above an SVP 1 or 2 using the [computer] program. That has an SVP 2, so that wouldn't have gotten eliminated . . ." R.93. The expert interrupted the question stating, "[n]o, no, no, no, no . . . [n]o I was not articulate then, obviously. I eliminate everything except SVP 1 or 2. And then, from the remaining SVP 1 or 2, then I have to go through, look at what the actual DOT is, look at what the description is, and then, from experience, decide whether that's going to be an appropriate job." R.93. After this explanation, Plaintiff's attorney asked which DOT codes were eliminated from the SOC code, and the expert could not immediately respond, stating such information is in pages of raw data that she maintains separately. R.93. Contrary to Plaintiff's characterization of this testimony, the vocational expert did *not* acknowledge she included DOT codes that should have been precluded and instead explained her process for removing codes.

      Finally, Plaintiff incorrectly suggests that the expert "failed to identify any specific method she utilized to approximate her job numbers." *See* Doc. No. 11 at 9. It is true that the vocational expert testified that does not rely on SkillTran, *see* R.82-83, and that she did not explicitly refer the "equal distribution method." But nothing in the regulations require her—or any other expert—to utilize a specific methodology to reach job estimates. Indeed, "[i]t is not the province of this Court to reform the methodology that [the Administration's vocational experts] use to determine

11

available and appropriate jobs in the national economy that match a claimant's RFC." *Mariani v. Comm'r of Soc. Sec.*, No. 1:18-CV-14747-NLH, 2019 WL 5418092, at *7 (D.N.J. Oct. 23, 2019). Here, the expert cogently explained that her job numbers come from the Department of Labor and Industry and Bureau of Labor Statistics, noting that they are grouped by codes. R.82. She explained why she does not rely on the SkillTran program, even though she still refers to it as a reference point. R.82-83. Next, she explained that within a group number, she eliminates codes based on the claimant's limitations, the hypothetical questions, and her years of vocational experience observing and evaluating specific jobs. R.84. Indeed, she explained that she tries to use "pretty common jobs that have stood the test of time and not some obscure jobs or jobs that have become more semi-skilled or skilled." R84. However unsatisfied Plaintiff might be with this approach—and the expert's inability at the hearing to identify specific DOT codes that were removed—it is plainly inaccurate to suggest that the expert failed to explain her methodology.

In short, and consistent with *Biestek's* command, the undersigned defers to the ALJ's assessment of the vocational expert's testimony, and finds that it was sufficient to surpass the "more-than-a-mere-scintilla threshold" to qualify as substantial evidence. Plaintiff has not identified other aspects of the administrative record that would render her testimony unreliable, and therefore, Plaintiff's request for remand is denied.[8]

---

[8] In his response brief, the Commissioner noted that the regulations only require that the Administration show that "Plaintiff could perform a 'significant number of jobs (in one or more occupations)' in the national economy." *See* Doc. No. 12 at 7 (citing 20 C.F.R. §§ 404.1566(b), 416.966(b)). In this regard, the Commissioner argues that "Plaintiff does not dispute that significant numbers of jobs exist for the identified DOT occupations, but merely disputes the documentation of the vocational expert's methodology." *See id.* (citing Doc. No. 11 at 4-10).

The undersigned does not entirely agree with the Commissioner's characterization of Plaintiff's appeal. But it does highlight a more significant obstacle that Plaintiff did not attempt to overcome. Even if Plaintiff is correct and the vocational expert overstated the number of jobs available in the national economy, he has *not* advanced any argument concerning the magnitude of this error. He has not, for example, suggested that the ALJ's hypothetical failed to include all credibly established limitations, which would necessarily cast doubt on the entirety of the job estimates. He simply claimed that the expert's figures

## IV. CONCLUSION

For the reasons explained above, Plaintiff's request for review is **DENIED**. The Court finds that the ALJ's decision was supported by substantial evidence. As such, the final decision of the Commissioner of Social Security is **AFFIRMED,** and this matter is **DISMISSED.** An appropriate Order follows.

BY THE COURT:

*s/Pamela A. Carlos*
PAMELA A. CARLOS
U.S. Magistrate Judge

---

*might* be inflated given the data and methodology concerns. But as noted above, the Third Circuit in *Craigie* has found that as few as 200 jobs in the regional economy was sufficient to indicate that substantial gainful work existed in the national economy." *See Craigie*, 835 F.2d at 58. As recently as 2022, district courts in this circuit have "continued to cite *Craigie* for that proposition." *See Michele C.,* No. 1:21-CV-2051, 2022 WL 5242283, at *16 (citing *Williams v. Comm'r of Soc. Sec.*, No. CV 20-12254, 2022 WL 279838, at *10 (D.N.J. Jan. 31, 2022); *Pucciarello v. Colvin*, No. CV 15-3719, 2016 WL 3912851, at *18 (D.N.J. July 19, 2016)). In fact, the Third Circuit in 2016 issued an unpublished opinion that also cited to *Craigie* and found that the "ALJ did not err by concluding that the 569 jobs available as a surveillance system monitor was evidence of other work in significant numbers in the national economy." *Ahmad*, 531 F. App'x at 278.

Here, the vocational expert identified four occupations that in the aggregate account for nearly one million jobs nationwide. In other words, even if the expert's methodology overstated the figures by ninety-nine percent (99%), there would still be nearly 10,000 jobs that Plaintiff could perform. This far exceeds the threshold that the Third Circuit has accepted for these purposes.